# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, a Canadian corporation, and SUN LIFE ASSURANCE COMPANY OF CANADA (U.S.), a Delaware corporation, ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No.<br>11-12013-FDS |
| v. ) ) | |
| SUN BANCORP, INC., a New Jersey corporation, and SUN FINANCIAL SERVICES, LLC, a New Jersey limited liability company, ) ) ) ) ) | |
| Defendants. ) | |

_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' SECOND MOTION TO DISMISS

**SAYLOR, J.**

This is a trademark infringement action brought by plaintiffs Sun Life Assurance Company of Canada ("SLACC") and its American affiliate (Sun Life Assurance Company of Canada (U.S.)) ("SLACC-US")  against a New Jersey bank holding company, Sun Bancorp, Inc. ("SBI"), and its affiliate, Sun Financial Services ("SFS").   SLACC and its affiliate own and use trademarks containing the term "Sun" in connection with financial and insurance services, and contend that defendants' use of the mark "Sun Financial Services" infringes on their trademark rights.   SLACC also opposes SBI's application to trademark "Sun Wealth Management."

SLACC filed this action on November 14, 201l.  SBI and SFS have moved to dismiss the complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) and for improper

venue pursuant to Fed. R. Civ. P. 12(b)(3).  For the reasons stated below, the motion will be granted.

**I.      Background**

      **A.      Factual Background**

The facts are stated as alleged in the amended complaint and as included in subsequent filings to the extent that they are uncontested.

Plaintiff SLACC is a Canadian corporation with a principal place of business in Toronto, Ontario.  (Am. Compl. ¶ 1).  SLACC has been licensed to do business in Massachusetts since 1926, and regularly conducts business in Massachusetts.  (Am. Compl. ¶ 1).  Plaintiff  SLACC-US is a Delaware corporation with a principal place of business in Wellesley Hills, Massachusetts.  (Am. Compl. ¶ 2).

Defendants are New Jersey corporations with principal places of business in Vineland, New Jersey.  (Am. Compl. ¶ 3).  SBI is a bank holding company, whose principal subsidiary is Sun National Bank.  SFS is a limited liability company owned by Sun National Bank.  (*See* Pl. Opp. 3).  Sun National Bank has 65 locations in New Jersey and two offices in Pennsylvania; it has no offices in Massachusetts.  (Def. Mot. 5).  Neither SBI nor SFS are registered to do business in Massachusetts.  (Def. Mot. 5).

SLACC maintains an insurance group sales office in Massachusetts.  (Am. Compl. ¶ 11).  SLACC-US employs more than 1500 people at its headquarters in Massachusetts.  (Am. Compl. ¶ 11).  Together with their affiliates, they have continuously used trademarks containing the term "Sun" in connection with financial and insurance services in the United States for more than 100 years.  (Am. Compl. ¶ 10).  Plaintiffs own the following United States trademarks in connection

with financial services:  "Sun Life"; "Sun Life Financial"; "Sun Life Financial Masters"; "Sun

Income Riser"; "Sun Capital"; "Sun Accumulator"; "Sunadvisor"; "Sun Capital Advisers LLC";

"Sun Universal Protector"; "Sun Survivorship UL"; and "Sunexcel."  (Am. Compl. ¶¶ 15-16).

According to the complaint, each of these marks is widely recognized by the general consuming

public in the United States as a designation of the source of SLACC services.  (Am. Compl. ¶

19).

SBI and SFS offer financial services throughout the United States, including

Massachusetts, under the trade names "Sun National Bank" and "Sun Bancorp."  (Am. Compl. ¶

23).  SBI and SFS use the internet to promote sales of services under the marks "Sun National

Bank," "Sun Financial Services," and "Sun Home Loans," through the website

https://www.sunnbnj.com/home/personal, which is available to consumers throughout the United

States, including consumers in Massachusetts.  (Am. Compl. ¶ 24).  Sun National Bank, rather

than SBI or SFS, owns and operates the website.  (*See* Pl. Opp. 3; Def. Rep. 1-2).  The only

specific reference to Massachusetts on the website occurs within a drop-down menu of all fifty

states on a customer information form.  (*See* Pl. Opp. 8-9).

SBI and SFS have a contractual relationship with Computershare Investor Services, LLC

("Computershare"), which acts as a transfer agent.  (*Id.* at 4).  Computershare has an office in

Massachusetts.  (*Id.*).

SBI filed a federal trademark application for the mark "Sun Wealth Management" on

February 5, 2009, in connection with the following services:  "'promotion of financial and

insurance services of others in areas of life, health, disability, long-term care, property and

casualty and business and income protection insurance; business management and planning

services; business services, namely, identification of lending sources and business succession planning services; tax planning services' and for 'financial services, namely, estate planning services, financial planning services, retirement planning, investment consultation and investment of funds for others; administration of employee benefit plans concerning insurance and finance; valuation of businesses and real estate.'" (Am. Compl. ¶ 25). SLACC opposed the application. (Am. Compl. ¶ 25).

### B. Procedural History

On November 14, 2011, plaintiffs filed this action alleging claims against SBI and SFS for (1) trademark infringement in violation of 15 U.S.C. § 1114 *et seq.*; (2) false designation of origin and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125(a); (3) federal dilution arising under 15 U.S.C. § 1125(c); and (4) violation of trademark rights under the common law. (Compl. ¶ 4).

SBI and SFS have moved to dismiss the action for lack of personal jurisdiction and lack of venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). On April 11, plaintiffs filed an amended complaint. On April 25, defendants moved a second time to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) and (3).[1]

## II. Analysis

### A. General Principles

The exercise of personal jurisdiction over a defendant must be both authorized by statute and consistent with the due process requirements of the United States Constitution. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996); *Intech, Inc., v. Triple "C" Marine*

---

[1] An earlier motion to dismiss on similar grounds was denied as moot in light of the filing of an amended complaint.

*Salvage, Inc.*, 444 Mass. 122, 125 (2005); *Good Hope Indus., Inc. v. Ryder Scott, Co.*, 378 Mass. 1, 5-6 (1979).  Furthermore,

> A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction.  Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.  General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations and quotations omitted).

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  A district court faced with a motion to dismiss under Rule 12(b)(2) may choose among several methods for determining whether the plaintiff has met its burden:  the "*prima facie*" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard.  *Id.* at 50-51, 51 n.5; *Foster-Miller, Inc., v. Babcock & Wilcox Can.*, 46 F.3d 138, 145-47 (1st Cir. 1995); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675-78 (1st Cir. 1992).

Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the *prima facie* standard governs its determination.  *Swiss American*, 274 F.3d at 618.  This standard is the "most conventional" of the methods for determining personal jurisdiction.  *Daynard*, 290 F.3d at 51 (quoting *Foster-Miller*, 46 F.3d at 145).  In conducting a *prima facie* analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed), construing them in the light most favorable to the plaintiff; the court, however, should not credit

"conclusory allegations or draw farfetched inferences." *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).   The court can "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Daynard*, 290 F.3d at 51.  Although the court will construe the facts in the light most favorable to the plaintiff in a motion to dismiss, the plaintiff still has the burden of demonstrating each jurisdictional requirement. *See Swiss American*, 274 F.3d at 618.

### B.      Massachusetts Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, states in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:
>
> (a)      transacting any business in this commonwealth;
>
> . . .
>
> (d )     causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3.[2]

As noted, the principal activities of defendants in Massachusetts consist of (1) the

---

[2] The Supreme Judicial Court has interpreted the Massachusetts long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443 (1972); *accord Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771 (1994).  Some federal courts have therefore chosen to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard*, 290 F.3d at 52; *see also Sawtelle*, 70 F.3d at 1388 ("[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the . . . constitutional standards."); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006). Massachusetts' own courts, however, have generally conducted the statutory analysis before reaching the constitutional question.  *See, e.g.*, *Roberts v. Legendary Marine Sales*, 447 Mass. 860, 863 (2006); *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979).

operation of a website open to Massachusetts residents (and residents of the other 49 states) and

(2) the presence of a transfer agent.  The Supreme Judicial Court addressed personal jurisdiction

in the context of internet-based activities in *Roberts v. Legendary Marine Sales*, holding that

neither subsection (a) nor subsection (d) of the long-arm statute extends jurisdiction over an out-

of-state defendant who has engaged in a single transaction via the internet with a Massachusetts

resident.  447 Mass. 860, 863 (2006).

As to subsection (a), the Roberts court held that the sale of a single boat by a dealership

to a buyer in Massachusetts did not amount to "transacting any business in this Commonwealth,"

because the deal "was an isolated [transaction] lacking a justifiable ground on which to assert

jurisdiction."  *Id.*  In reaching that conclusion, the court relied on its prior decision in *Intech, Inc.

v. Triple "C" Marine Salvage, Inc.*, 444 Mass. 122 (2005).  In that case, it had held that a

transaction across state borders did not fall within the statute because it "had only a 'slight effect

on the commerce of the Commonwealth' and was 'void of any purposeful intent on the part of

the defendant to avail itself of the privilege of conducting activities within the forum State.'"  *Id.*

at 126 (quoting *Droukas v. Divers Training Acad., Inc.*, 375 Mass. 149, 154 (1978)).

These principles also preclude application of subsection (a) in this case.  Defendants do

not specifically target Massachusetts residents as prospective banking clients.  In fact, the only

alleged mention of Massachusetts by defendants is the inclusion of the Commonwealth as one of

fifty options in a drop-down menu on a website.  (Pl. Opp. 8-9).  Even if the website activities

can be fairly attributed to defendants,[3] plaintiffs do not allege that a non-trivial number of

---

[3] This is a contested presumption.  It is undisputed that the website is not owned and operated by
defendants, but by a related corporate entity.  This makes the degree of control exercised by defendants over the
website dispositive as to whether they can be held responsible for it.  *See Ruiz v. Bally Total Fitness Holding Corp.*,
447 F. Supp. 2d 23, 27 (D. Mass. 2006) (holding that the presumption of corporate separateness must be overcome

Massachusetts residents, if any, actually receive services on the website.  Plaintiffs' reliance on holdings from other jurisdictions for the proposition that even a very small number of online customers in Massachusetts could support a finding of jurisdiction here is unpersuasive.[4]  As stated above, the law in Massachusetts is well-established that isolated transactions unaccompanied by "purposeful intent" on the part of defendants and having only a "'slight effect on the commerce of the Commonwealth'" are not enough to support jurisdiction under subsection (a) of the long-arm statute.  *Intech, Inc.*, 444 Mass. at 126 (quoting *Droukas*, 375 Mass. at 154).  Plaintiffs here have not alleged facts that would meet that standard, and thus subsection (a) of the long-arm statute cannot provide the basis for personal jurisdiction here.

As to subsection (d), the court in *Legendary Marine* held that a single boat sale was not sufficient to establish that a defendant engaged in a "persistent course of conduct" of doing business in the Commonwealth or that it derived "substantial revenue" in the state. *Legendary Marine Sales*, 447 Mass. at 865.   Plaintiffs here appear to concede that defendants have not engaged in a "persistent course of conduct," nor have they earned "substantial revenue" from Massachusetts.  (*See* Pl. Opp. 17).  Indeed, plaintiffs premise much of their jurisdictional argument on the proposition that a "small" (presumably as opposed to "substantial") amount of revenue can be enough to support a finding of jurisdiction.  (*See* Pl. Opp. 17).  This argument is

by clear evidence that one related entity in fact controls the activities of the other.).

[4] Plaintiffs point to *Tristrata Tech., Inc. v. Emulgen Labs., Inc.*,537 F. Supp. 2d 635 (D. Del. 2008), and to *Engineered Prods. & Servs. v. Echo Eng'g & Prod. Supplies, Inc.*, 666 F. Supp. 2d 938 (E.D. Wis. 2009) .  In *Tristrata*, the court found personal jurisdiction under the Delaware long-arm statute where the defendant earned 0.0015% of its revenue in Delaware as a result of offering its product for sale to Delaware residents not only on its website but also through a national direct solicitation e-mail campaign.  537 F. Supp. 2d at 639.  In *Engineered Products*, the court found specific personal jurisdiction in a patent case on the basis of two sales in Wisconsin, because federal patent law provides that the situs of a patent holder's injury is where an infringing product is sold. 666 F. Supp. 2d at 941.  In addition to the obvious fact that those cases are not binding precedent on this Court, the present case involves neither direct e-mail solicitation nor patent infringement.

contrary to the law in Massachusetts.

The core principle of *Legendary Marine* is that even a website that facilitates an interstate transaction with a Massachusetts resident is insufficient to establish jurisdiction, if the transaction is not the result of purposeful solicitation of business in Massachusetts and if business with Massachusetts residents is an unusual event from the perspective of the defendants. Both of these conditions are present in this case. Defendants are located in New Jersey, and all of the 67 offices and branches of the defendant bank are in either New Jersey or Pennsylvania. Whatever revenue they have earned from Massachusetts residents is likely minimal; at any rate, plaintiffs have not provided any evidence, or even a suggestion, that it is non-negligible. Thus, plaintiffs have not met their burden, under subsection (d), of showing that defendants either engaged in a "persistent course of conduct" related to business in Massachusetts or that they derived "substantial revenue" from customers who reside in Massachusetts.

Contrary to plaintiffs' contention, the actions of defendants' transfer agent do not subject them to jurisdiction under subsection (d).[5] It is indeed well-established that "the contacts of a corporation's agent can subject the corporation to personal jurisdiction." *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1090 (1st Cir. 1992). However, it is not the case that all of a transfer agent's actions are imputed to every company it deals with. If that were true, in situations like this, where the transfer agent has a presence in many more states (and countries) than its client, transfer agents would subject their clients to suit in countless

---

[5] Because it is undisputed that the trademark cause of action here did not "arise out of" (or was in any way related to) the actions of the transfer agent, the only potential grounds for jurisdiction on the basis of its actions is subsection (d).

foreign jurisdictions.  Instead, the scope of the alleged agency relationship is limited to the

transactions by the transfer agent on behalf of the defendants.  Transfer agents serve many

masters; their agency relationship with each is distinct.  Plaintiffs do not allege the extent or

location of the transactions carried out on behalf of defendants.  While it may well be true that

defendants' transfer agent has an office in Massachusetts (as well as in a number of other states),

no other facts are alleged that support the required finding that the transfer agent engaged in

"persistent" transactions in Massachusetts to generate "substantial revenue" on behalf of

defendants, rather than any of its other clients.  *Cf. Howse v. Zimmer Mfg. Co.*, 757 F.2d 448,

452-53 (1st Cir. 1985) (manufacturer of surgical implant devices subject to personal jurisdiction

in Massachusetts based on the facts that (1) his independent distributor with a year's sales of $4

million and the maintenance of $380,000 or more of inventory *of the manufacturer's products*;

and (2) the manufacturer's own employees "always" traveled to Massachusetts to confer with

prospective and actual customers concerning the development of new products).  Accordingly,

the Court finds that the plaintiffs have failed to allege a "persistent course of conduct" of doing

business or "substantial revenue" generation by defendants in Massachusetts through their agent.


Thus, because neither of the applicable requirements of ch. 223A, § 3 have been satisfied,

jurisdiction cannot be asserted over defendants under the long-arm statute.

### C.    <u>Due Process</u>

Because there are insufficient contacts between defendants and the forum state to justify

finding personal jurisdiction under the Massachusetts long-arm statute, further constitutional

inquiry is unnecessary.  However, because several courts in the First Circuit have analyzed

personal jurisdiction in cases involving transactions over the internet as questions of due process, this Court will briefly explain why it would reach the same result under that rubric.

Due process requires that a defendant over whom a Massachusetts court will exercise jurisdiction has maintained "minimum contacts" with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Plaintiffs assert that the Court has both general and specific jurisdiction over defendants.  The Court disagrees with both assertions.

It is well-established that the Due Process Clause imposes three requirements on the exercise of jurisdiction over out-of-state defendants. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).  "First, the defendant must have sufficient 'minimum contacts' with the [Commonwealth].  For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts.  For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state.  Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful.  And third, the exercise of jurisdiction must be reasonable under the circumstances." *Id.* at 57.

In cases involving interactions through a website that is operated from outside the forum state but that residents in that state can access, the focus of this analysis has been on the "purposeful availment" requirement. *See, e.g.*, *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35-36 (1st Cir. 2010); *Sportschannel New England Ltd. P'ship v. Fancaster, Inc.*, 2010 WL 3895177, *13-20 (D. Mass. Oct. 1, 2010); *BroadVoice, Inc. v. TP Innovations LLC*, 733 F. Supp. 2d 219, 224-27 (D. Mass. 2010)*; Back Bay Farm, LLC v. Collucio*, 230 F. Supp. 2d 176, 185 n.

10 (D. Mass. 2002).  This Court shares the concern articulated in most of these cases that without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would "eviscerate" the limits on personal jurisdiction over out-of-state defendants.  *Cossaboon*, 600 F.3d 25, 35 (1st Cir. 2010).

In *Cossaboon,* the First Circuit addressed the question of whether an interactive website, located outside the forum state and directed at residents of every state, may on its own fulfill the requirement of purposeful availment.  *Id.* at 35-36.  The court held that something "more" is required to support the exercise of personal jurisdiction based on website activity, and "focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website."  *Id.* at 35.   In finding that it lacked personal jurisdiction over the defendant, the court found it instructive that the defendant's website was available to anyone with internet access, did not target forum state residents in particular, and any advertising on it was no more likely to solicit business in the forum state than anywhere else.  *Id.* at 35.  The court also emphasized that although the website was interactive— "permit[ing] users to make online donations, complete patient pre-registration, register for classes, find a doctor, and apply for employment"—it primarily discussed the services provided at the defendant's facility in Maine.  *Id.*

Here, the website describing defendants' services is also available to anyone with internet access, does not target Massachusetts' residents in general, and contains generic advertising that is no more likely to solicit customers in Massachusetts than anywhere else.  Though the website perhaps offers more commercial services than that of the defendants in *Cossaboon*, its primary purpose is still to promote and facilitate the services offered at New Jersey bank locations.  For

these reasons, the Court finds that defendants have not purposely availed themselves of Massachusetts.

Plaintiffs contend that in trademark infringement cases the injury occurs where the trademark owner is located, and that fact should constitute the "something more" required to show purposeful availment in the website activity context.  For support for this proposition, plaintiffs rely on *Venture Tape Corp. v. McGills Glass Warehouse*, 292 F. Supp. 2d 230, 232 (D. Mass. 2003).  Judge Lasker, writing before the First Circuit had taken up the issue, indeed found that, coupled with a nationally available interactive website, "the fact that the target of the alleged trademark infringement was a Massachusetts company" was enough to support personal jurisdiction.  *Id.* at 233.  Judge Lasker's reasoning was based on an analogy between the situs of trademark infringement and the Supreme Court's holding in *Calder* finding jurisdiction proper in a defamation suit in the state where plaintiff lived and worked.  *See id.; see also Calder v. Jones*, 465 U.S. 783 (1984).

That analogy, however, was misguided for three reasons.  First, *Calder* was a defamation case, and the Supreme Court has not yet extended its reasoning to trademark infringement cases. Secondly, *Calder* requires not only that the effects be felt in the forum state, but also that the defendant's intentional conduct be "calculated to cause injury [there]."  *Calder*, 465 U.S. at 791. In a trademark infringement case, particularly one such as this involving an established national brand offering services in 49 states, the use of the offending trademark is presumably calculated to hurt plaintiff's business in the state where it is used by the defendant.  The location of the trademark holder's headquarters is irrelevant with respect to the customers who are confused or deceived by the infringement, and therefore arguably is not the real situs of the tort.  Finally, if

13

the reasoning of *Calder* did support this expansive view of jurisdiction in internet trademark

infringement cases, there would be a substantial risk that defendants would be dragged into court

in foreign jurisdictions with which they had little to no actual contact simply because a

trademark holder happened to reside there.  Accordingly, the Court finds that the reasoning of

*Venture Tape* should not control, particularly when viewed in light of the subsequent First

Circuit decision in *Cossaboon*.

There remains the issue of the transfer agent.  Because it is undisputed that the transfer

agent's services are unrelated to the trademark matter before the Court, jurisdiction over

defendants based upon its actions would have to be general rather than specific.  General

jurisdiction requires a showing of "continuous and systematic contacts with the state."  *Harlow*,

432 F.3d at 57.  For the reasons articulated above discussing the agent's actions under the long-

arm statute, the Court finds that the facts alleged do not support the required finding that the

imputed actions of the transfer agent amount to "systematic and continuous contacts" with

Massachusetts by defendants.

In addition, the Court finds that even if defendants had sufficient minimum contacts and

purposely availed themselves of Massachusetts, it would be unreasonable for the Court to

exercise jurisdiction.  In making the reasonableness determination, the court must examine the

five "gestalt" factors:  (1) the defendant's burden of appearing, (2) the forum state's interest in

adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief,

(4) the judicial system's interest in obtaining the most effective resolution of the controversy,

and (5) the common interests of all sovereigns in promoting substantive social policies.  *See*,

*e.g.*, *Foster-Miller, Inc., v. Babcock & Wilcox Can.*, 46 F.3d 138, 150 (1st Cir. 1995).

Here, the balance of those factors suggests that the exercise of jurisdiction by this Court would be unreasonable.  The first factor somewhat favors a New Jersey forum; the choice of Massachusetts as a forum imposes a burden on the defendants, albeit slight.  The second factor weighs in favor of the choice of New Jersey.  Although Massachusetts has an interest in protecting the trademarks of its companies, so does New Jersey, and while plaintiffs have a wide-reaching national and international presence, defendants do not. This lawsuit raises no novel issues the resolution of which would impact upon or alter Massachusetts law.  Nor would the consequences of a decision adverse to SLACC-US directly impact any Massachusetts resident.  The third factor, the plaintiff's interest in convenient and effective relief, slightly weighs in favor of Massachusetts.  As noted, plaintiffs have a national and international presence, and New Jersey is not a grossly inconvenient forum.  The fourth factor weighs in favor of New Jersey; to the extent plaintiffs are requesting any injunctive relief preventing further infringement, that court is much better situated to monitor and enforce a judgment against New Jersey defendants.  As for the last factor, both New Jersey and Massachusetts share the same substantive concerns for the protection of trademark rights.

In sum, the because the website featuring defendants' services is not directed at Massachusetts any more than it is at the nation at large, and because plaintiffs have not alleged that defendants have a non-trivial amount of customers or revenue from Massachusetts, the Court does not have personal jurisdiction over defendants either under the Massachusetts long-arm statute or the Due Process Clause.

## III.   <u>Jurisdictional Discovery</u>

It is well-established that "a diligent plaintiff who sues an out-of-state corporation and

who makes out a *colorable case* for the existence of in personam jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. Mass. 2001) (citing *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)) (emphasis added). In determining whether plaintiffs have diligently made out a "colorable case" of personal jurisdiction, the Court must determine if they have "present[ed] facts to the court which show why jurisdiction would be found if discovery were permitted." *Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625.

Here, the Court finds that plaintiffs established neither the existence of personal jurisdiction nor a "colorable case" for personal jurisdiction that is sufficient to warrant jurisdictional discovery under *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 637 (1st Cir. 2001). *See also Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 681 (1st Cir. 1992) (noting that jurisdictional discovery may be suitable "where the plaintiff had been diligent and was somewhat unfamiliar with his adversary's business practices"); *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1086 (1st Cir. 1973) (finding the same, where "complex factual matters are in question").

In support of their requests for discovery, plaintiffs rely on two contentions of fact, neither of which is compelling. The first contention is that discovery will uncover a small amount of revenue that defendants earned from Massachusetts. (*See* Pl. Opp. 17). Plaintiffs apparently concede that defendants' course of conduct in Massachusetts has not been "persistent" and has not generated "substantial" revenue. (*See* Pl. Opp. 17). However, as the above analysis suggests, to demonstrate personal jurisdiction in this case, plaintiffs would be

16

required to prove more than just a few anomalous transactions by defendants in Massachusetts. The second contention is that discovery will reveal the extent of the defendants' contacts with Computershare, its third-party transfer agent. However, plaintiffs have not alleged that these contacts will be based entirely, or even mostly, in Massachusetts or that they will be sufficient to meet the jurisdictional requirements. Accordingly, this Court is not convinced that a fishing expedition into the facts of this third-party relationship is likely to yield any significant new jurisdictional facts. Accordingly, because the proposed discovery is not likely to change the Court's determination that it lacks personal jurisdiction over the defendants, plaintiff's request for jurisdictional discovery will be denied.

**IV.** **Venue**

Because the Court finds that it lacks personal jurisdiction over the defendants, it need not reach the issue of whether venue is proper. For practical purposes, however, it should be noted that in the Court's view venue was most likely improper as well.[6]

**IV.** **Conclusion**

For all the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  October 4, 2012

---

[6] 28 U.S.C. § 1391(b)(3), on which the plaintiffs rely, applies only "if there is no district in which an action may otherwise be brought as provided in [§ 1391(b)]."  That is not the situation here, as all defendants are citizens of New Jersey, and § 1391(b)(1) provides that venue is proper in " a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."